```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
GUCCI AMERICA, INC., et al.,        :
                                    :
                    Plaintiffs,     :
                                    :
        -against-                   :   09 Civ. 8458 (RJS)(THK)
                                    :
                                    :   MEMORANDUM OPINION
                                    :   AND ORDER
CURVEAL FASHION d/b/a REPLICASI.COM :
and SEMELUR.COM, et al.,            :
                                    :
                                    :
                    Defendants.     :
------------------------------------X
```

**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
**DOC #:** _____
**DATE FILED:** 3/8/10

**THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**

Plaintiffs Gucci America, Inc., Balenciaga, S.A., and Balenciaga America, Inc. ("Plaintiffs") bring this action against Defendants Curveal Fashion, doing business as ReplicaSi.com and Semelur.com, Joseph Lee a/k/a Joe Yap, ABC Companies, and John Does ("Defendants"), for trademark infringement, false designation of origin, trademark counterfeiting, trademark dilution, unfair competition, and false and deceptive trade practices. (See Complaint, dated Oct. 5, 2009 ("Compl.").) The case was referred to this Court for general pretrial supervision.

Presently before the Court is a discovery dispute between Plaintiffs and third party United Overseas Bank Limited, Singapore ("UOB").[1] UOB is the parent company of United Overseas Bank (Malaysia) Berhad ("UOB Malaysia"). According to Plaintiffs, Defendants have transferred approximately $900,000 received from

---

[1] Defendants have never appeared in this action.

1

the sale of counterfeit goods over the past 12 months to an account in the name of Defendant Curveal Fashion held at UOB Malaysia.[2]

On October 23, 2009, United States District Judge Richard J. Sullivan issued a Preliminary Injunction that, among other things, restrained and enjoined any person or financial institution "who receive[s] actual notice of this order" from "transferring, disposing of, or secreting any money . . . or other assets of Defendants." (See Preliminary Injunction, dated Oct. 23, 2009 ("PI Order"), at 6.)  In addition, Judge Sullivan directed that "any other third party receiving a subpoena pursuant to this Order shall produce documents responsive to such requests within ten (10) days of service." (Id. at 9.)  The PI Order further provided that "any third party . . . may appear and move for the dissolution or modification of any provisions of this Order that impact upon it." (Id. at 10.)

Shortly thereafter, Plaintiffs served a subpoena on UOB's New York Agency in midtown Manhattan ("UOB NY"), on November 5, 2009, seeking certain documents and information regarding Defendants' Malaysian bank accounts (the "Subpoena").  UOB NY refuses to comply with the Subpoena on several grounds, but primarily asserts that doing so would violate banking secrecy laws in Malaysia. Plaintiffs contend that Malaysian banking laws appear to permit

---

[2] Plaintiffs learned of these accounts after receiving records from the Royal Bank of Scotland.

2

disclosure under these circumstances, and, in any event, UOB NY's obligation to comply with the Subpoena is not negated by Malaysian law.

During the pendency of this discovery dispute, Judge Sullivan issued a default judgment in favor of Plaintiffs in the amount of $13.7 million, and a permanent injunction against Defendants. Judge Sullivan ordered that "all of Defendants' asset holders . . . who receive notice of this order . . . liquidate those of Defendants' assets . . . and pay the value of such Defendants' assets to Plaintiffs in partial satisfaction of the damages award." (See Memorandum & Order, dated Jan. 20, 2010 ("Jan. 20 Order"), at 10.)  The Order further stated that "[t]his includes . . . any and all United Overseas Limited accounts that are associated with or utilized by [Defendants]."  (See id.)  Finally, the Order permanently enjoined "any person currently holding any other assets of Defendants . . . from transferring, disposing of, secreting, or otherwise paying or transferring into or out of any accounts associated with or utilized by any of Defendants any of Defendants' assets . . . without prior approval of the Court." (See id. at 11.)

Following the issuance of the January 20 Order, and a telephone conference with this Court, UOB NY submitted a legal opinion issued by a duly licensed Malaysian attorney (the "Legal Opinion"), that discusses "the legal implications that would ensue

if UOB Malaysia were to comply with the applicable provisions of Judge Sullivan's Order." (See Letter from Nicholas T. Donovan to the Court, dated Feb. 5, 2010 ("UOB NY's Feb. 5 Ltr."), at 2.) In light of the Legal Opinion, UOB NY maintains that "it is not permitted to comply with the applicable provisions of Judge Sullivan's Order." (See id.)

In response, Plaintiffs reiterate their contention that "a foreign company doing business in New York must abide by the order of a U.S. court," and "UOB should not be permitted to hide behind foreign law to flout a valid court order." (See Letter from Robert Weigel to the Court, dated Feb. 18, 2010 ("Pl.'s Feb. 18 Ltr."), at 1, 3.) Plaintiffs cite several cases from United States federal courts in support of their position.

Having considered all of the relevant facts, applicable law, and the parties' submissions, the Court concludes UOB NY must comply with the requests of the Subpoena.[3]

**DISCUSSION**

In determining whether to order discovery of documents and information "in the face of objections by foreign states," Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for the S.

---

[3] This Memorandum Opinion & Order addresses only the question of whether UOB NY must comply with the Subpoena's requests for documents and information. UOB NY's failure to turn over Defendants' assets in partial satisfaction of the Judgment is not presently before this Court. Therefore, it will not be addressed herein.

Dist. Of Iowa, 482 U.S. 522, 544 n.28, 107 S. Ct. 2542, 2556 n.28 (1987), courts in this Circuit have followed the approach set forth in the Restatement (Third) of Foreign Relations Law of the United States § 442(1)(c).[4]  See Strauss v. Credit Lyonnais, 249 F.R.D. 429, 438 (E.D.N.Y. 2008); Ssangyong Corp. v. Vida Shoes Int'l, No. 03 Civ. 5014 (KMW)(DFE), 2004 WL 1125659, at *6 (S.D.N.Y. May 20, 2004); United States v. Chase Manhattan Bank, N.A., 584 F. Supp. 1080, 1085-86 (S.D.N.Y. 1984).  In accordance with the Restatement, the Court must consider the following five factors: (1) the importance of the documents or information requested to the litigation; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of retrieving the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine the important interests of the state where the information is located.  See Strauss, 249 F.R.D. at 438-39.  In addition, courts in the Second Circuit may also consider "the hardship of compliance on the party or witness from whom discovery is sought [and] the good faith of the party

---

[4] Prior to the adoption of the Restatement (Third) of Foreign Relations Law of the United States, the Second Circuit followed the approach of the Restatement (Second) of Foreign Relations Law of the United States.  The differences between the two are insignificant for purposes of this analysis.

resisting discovery." Minpeco S.A. v. Conticommodity Servs., Inc., 116 F.R.D. 517, 523 (S.D.N.Y. 1987); see also Reino De Espana v. Am. Bureau of Shipping, No. 03 Civ. 3573 (LTS)(RLE), 2005 WL 1813017, at *3 (S.D.N.Y. Aug. 1, 2005).

1.   The Importance of the Documents to the Litigation

In the Subpoena, Plaintiffs seek documents and information regarding Defendants' bank accounts held in Malaysia.  According to Plaintiffs, in the last 12 months alone, Defendants have transferred upwards of $900,000 received from the sale of counterfeit goods into these accounts.  Defendants have never appeared in this action, and a $13.7 million Judgment has been entered against them.  Plaintiffs' ability to enforce Judge Sullivan's Order and, in turn, the Judgment, is dependent on Plaintiffs' access to these bank records.  UOB NY does not contest the relevance of this information to the litigation.  Therefore, the Court concludes that this information is both relevant and vital to the litigation, and the first factor weighs heavily in favor of Plaintiffs.

2.   The Degree of Specificity of the Requests

UOB NY has not lodged any specific objections to the Subpoena's requests.  Therefore, as a matter of law, UOB NY has waived its objections.  See British Int'l Ins. Co., Ltd. v. Seguros La Republica, S.A., No. 90 Civ. 2370 (JFK)(FM), 2000 WL 713057, at *9 (S.D.N.Y. June 2, 2000) (citing Fed. R. Civ. P. 33(b)(4),

34(b)).

In any event, UOB NY has been requested "to produce a specific, discrete source of information." Reino De Espana, 2005 WL 1813017, at *9. Plaintiffs have narrowly tailored the requests to target Defendants' accounts at UOB, which Plaintiffs have shown to be a repository for nearly $1 million of funds received by Defendants as a result of their infringing activities. Judge Sullivan even directed his January 20 Order towards a specific UOB account number, belonging to an account believed to be owned by Defendant Curveal Fashion. Certainly, UOB NY does not contend that the Subpoena is a mere "fishing expedition." Thus, the second factor also clearly favors Plaintiffs.

    3.    <u>Whether the Information Originated Outside the United States</u>

The parties to this dispute agree that all of the documents requested are maintained in Malaysia, by UOB's subsidiary. Although the Court agrees with Plaintiffs that UOB, a parent corporation doing business in New York, has "control" over the documents held by its Malaysian subsidiary, and could be compelled to produce them, the third factor only addresses the physical location of the documents. Plaintiffs do not suggest that the documents may be retrieved in the United States, nor does UOB NY appear to suggest such is the case. See Strauss, 249 F.R.D. at 441 n.12 (considering the implications if documents located in a bank's

7

foreign office might be retrieved electronically at the bank's United States offices).  Accordingly, the Court concludes that the third factor weighs in favor of UOB NY.

    4.   <u>Availability of Alternative Means</u>

In addressing the fourth factor, courts have held that "[i]f the information sought can easily be obtained elsewhere, there is little or no reason to require a party to violate foreign law." <u>Reino De Espana</u>, 2005 WL 1813017, at *9 (quoting <u>Richmark Corp. v. Timber Falling Consultants</u>, 959 F.2d 1468, 1475 (9th Cir. 1992)). On the other hand, if the information cannot be <u>easily obtained</u> through alternative means, this factor is said to counterbalance the previous factor - the location of the documents and information - and weighs in favor of disclosure.  See <u>British Int'l Ins.</u>, 2000 WL 713057, at *9.

Pursuant to section 97(1) of the Malaysian Banking and Financial Institutions Act 1989 ("BAFIA"), banks in Malaysia may not, as a general matter, disclose information regarding their customers to third parties.  Section 99 of BAFIA provides several exceptions to this prohibition.  For purposes of the instant case, subsection (1)(e) appears directly on point, permitting disclosure "where the licensed institution has been served a garnishee order attaching monies in the account of the customer."  BAFIA § 99(1)(e).  Thus, on its face, BAFIA appears to permit the disclosure of the requested documents under the present

circumstances, and the need to consider alternative means is unnecessary. The Malaysian attorneys retained by UOB NY, however, suggest otherwise.[5]

UOB NY's Malaysian attorneys contend, albeit without citation to any legal authority, that "[a]s a matter of construction of Malaysian statutes, s[ection] 99(1)(e) of BAFIA relates to garnishee orders issued by Malaysian Courts pursuant to Rules of the High Court 1980. . . . The Orders are not garnishee orders issued by the Malaysian Court, therefore the exemption provided by s[ection] 99(1)(e) does not apply." (See Legal Opinion, at 7-8.) While the Court is somewhat reluctant to swallow this assertion in the absence of any supporting legal authority, Plaintiffs offer no contrary authority, nor is the Court aware of any. Thus, to fall within the exemption to BAFIA for garnishee orders, it appears that Plaintiffs must first have the judgment recognized by the Malaysian courts.

Nevertheless, "the only foreign judgments recognized by the Malaysian Courts are those which fall within the jurisdiction of the Reciprocal Enforcement of Judgments Act 1958 ('REJA')." (See

---

[5] In accordance with Rule 44.1 of the Federal Rules of Civil Procedure, "the responsibility for correctly identifying and applying foreign law rests with the court." Rationis Enters. Inc. of Panama v. Hyundai Mipo Dockyard Co., Ltd., 426 F.3d 580, 586 (2d Cir. 2005); see also British Int'l Ins., 2000 WL 713057, at *7 (noting that court "may consider the opinions of experts, but it is not bound by their testimony, even if uncontradicted").

9

UOB NY's Feb. 5 Ltr., at 2.)  The United States is not listed as a reciprocating country under REJA.  Therefore, Plaintiffs must commence a fresh action in Malaysia to avail themselves of the exception found in section 99(1)(e) of BAFIA.

BAFIA also permits disclosure of bank records with the written consent of either the customer or the Central Bank of Malaysia. BAFIA § 99(1)(a) & (i).  It is apparent, based on Defendants' failure to appear in this action or respond to any of the Court's prior Orders, that the former option is not available.  Further, UOB Malaysia wrote to the Central Bank of Malaysia seeking its authorization for disclosure, but its request was denied. Specifically, the Central Bank of Malaysia stated that it is "unable to consider the request," and "remind[ed] [UOB Malaysia] to ensure it has exhausted all means before seeking approval" from the Central Bank.  (See Letter from the Central Bank of Malaysia to UOB Malaysia, dated Jan. 18, 2010.)  UOB NY offers no indication as to what it must do to "exhaust[] all means."  Thus, at this point, none of these other potential alternative means for disclosure under BAFIA are available to Plaintiffs.

Notwithstanding BAFIA's restrictions, UOB NY asserts that Plaintiffs could commence a separate action in Malaysia against Defendants and apply to that court for disclosure pursuant to the Banker's Books (Evidence) Act 1949 ("BBEA").  (See Legal Opinion, at 10.)  In this regard, disclosure would not be precluded by

10

BAFIA.  (See id.)  Although UOB NY does not elaborate on the costs, timing, or probable success of this alternative, Plaintiffs do not dispute the availability of this option.

In sum, the Court concludes that the only alternative means by which Plaintiffs might receive the bank records, is the commencement of an action in Malaysian courts against Defendant Curveal Fashion and securing a judgment, in order to invoke BAFIA's exception for garnishee orders, or to obtain disclosure pursuant to BBEA.  This alternative would require the retention of Malaysian counsel, possibly significant costs and logistical concerns, and no clear likelihood of success.  Therefore, the Court cannot conclude that this information is "easily obtained" through alternative means, and the fourth factor favors Plaintiffs.  See Reino De Espana, 2005 WL 1813017, at *9.  Further, this conclusion counterbalances the third factor, which the Court previously concluded otherwise favors UOB NY.  See British Int'l Ins., 2000 WL 713057, at *9.

   5.   Competing Interests

The fifth factor, which examines the competing interests of the United States and Malaysia, "is of the greatest importance in determining whether to defer to the foreign jurisdiction." Strauss, 249 F.R.D. at 443 (quoting British Int'l Ins. Co. Ltd., 2000 WL 713057, at *9).  Although the Court must consider Malaysia's interests in its bank secrecy laws, the United States

11

Supreme Court has held that "American courts are not required to adhere blindly to the directives of [a foreign blocking statute]." Aerospatiale, 482 U.S. at 544 n.29, 107 S. Ct. at 2556 n.29.

Here, it is apparent, as in all cases before United States courts, that the United States has "a substantial interest in fully and fairly adjudicating matters before its courts." Minpeco, 116 F.R.D. at 523-24; see also Alfadda v. Fenn, 149 F.R.D. 28, 34 (S.D.N.Y. 1993). Achieving that goal "is only possible with complete discovery." Reino De Espana, 2005 WL 1813017, at *4 (citation omitted). And, while the private commercial nature of this suit reduces, to some extent, the interests of the United States, both federal and state trademark laws are designed to protect the public from consumer confusion and deceptive trade practices. See S. Rep. No. 1333, 79th Cong. 2d Sess., at 3, 5 (1946); see also Goshen v. Mutual Life Ins. Co. Of N.Y., 98 N.Y.2d 314, 323, 746 N.Y.S.2d 858, 863 (2002) (stating that New York General Business Law § 349 "was enacted to provide consumers with a means of redress for injuries caused by unlawfully deceptive acts and practices").

By virtue of Defendants' default, Plaintiffs have succeeded in establishing liability on their trademark claims, and a judgment in the amount of $13.7 million has been entered against Defendants. Nevertheless, in the absence of the discovery requested by the Subpoena, Plaintiffs are left without a remedy and it cannot be

said that the matter has been "fully and fairly adjudicated." Indeed, to assist Plaintiffs in collecting the judgment, federal and state law expressly authorize the issuance of the Subpoena. See Fed. R. Civ. P. 64; N.Y. CPLR 5224(a).

On the other hand, Malaysia has an interest in protecting the privacy rights of its bank clientele. Malaysia has found this interest significant enough to codify it in BAFIA. That said, BAFIA also permits disclosure under certain circumstances. BAFIA provides for an absolute waiver of its protections by the customer, which the Second Circuit has found to be "of considerable significance," in undermining the importance of the interest. See United States v. First City Nat'l Bank, 396 F.2d 897, 902 (2d Cir. 1968) (noting that "it is surely of considerable significance that Germany considers bank secrecy simply a privilege that can be waived by the customer").

BAFIA's privacy protections are also set aside to allow a bank to comply with a garnishee order. Although that would appear to be the case here, Malaysian counsel suggests otherwise, elevating form over substance, because the Order in this case was not issued by a Malaysian court. Yet, compelling production here to comply with a garnishee order - albeit one issued by a United States court - would not be inconsistent with the spirit of BAFIA. Thus, while Malaysia certainly has an interest in protecting the confidentiality of its banking customers, that interest is not

13

necessarily undermined by ordering compliance with the Subpoena.

A violation of BAFIA's protections against disclosure, however, does carry the potential for significant civil and criminal penalties. Any person who is convicted of unlawful disclosure could be imprisoned for up to three years, and fined up to three million Malaysian ringgits (or approximately $900,000).[6] See BAFIA § 103. While this would ordinarily suggest that Malaysia has a strong interest, UOB NY has not submitted any authority regarding the likelihood of prosecution, conviction, or imposition of the maximum sentence or fine, if a party is compelled to disclose information pursuant to a court order. Thus, Malaysia's interest might be significant in some cases, but on the basis of the parties' submissions, it is unclear whether that is the case here.

Moreover, the Malaysian government has not voiced any objections to disclosure in this case, which the Second Circuit has found "militates against a finding that strong national interests of the foreign country are at stake." See Minpeco, 116 F.R.D. at 525 (citing United States v. Davis, 767 F.2d 1025, 1035 (2d Cir. 1985), and First City Nat'l Bank, 396 F.2d at 904). Indeed, "[t]he absence of any objection by the [foreign] government to the

---

[6] Despite UOB NY's several submissions to the Court claiming it could be fined up to $3 million, the statute provides for a fine in Malaysian currency, not American dollars. (See Legal Opinion, at 12.)

14

subpoena and subsequent order . . . is significant." Davis, 767 F.2d at 1035; cf. Minpeco, 116 F.R.D. at 525 (finding Switzerland's interest substantial when the Swiss government submitted two official statements expressing its objections). But, even if Malaysia had submitted objections, that fact is not dispositive. See In re Grand Jury Subpoena dated Aug. 9, 2000, 218 F. Supp. 2d 544, 549 (S.D.N.Y. 2002) (ordering production despite submission's from the foreign state arguing that the requested information was "strictly confidential" and would violate civil and criminal statutes).

Therefore, the Court concludes that the United States interest in fully and fairly adjudicating matters before its courts, including the enforcement of judgments, outweighs Malaysia's interest in protecting the confidentiality of its banking customers' records. This is particularly so given the fact that (1) the protections of BAFIA are a privilege that can be waived by the customer, (2) disclosure is permitted when there is a Malaysian garnishee order, and in this case there is its equivalent, and (3) Malaysia has failed to object to disclosure.

6.   Hardship of Compliance on UOB NY

As noted above, any person who is found to have violated BAFIA's privacy protections, upon conviction, may be sentenced to up to three years imprisonment, and fined up to $900,000. The potential of criminal, rather than civil, liabilities typically

15

weighs in favor of the objecting party.  See Strauss, 249 F.R.D. at 454.  In addition, UOB NY's non-party status also tips the scale in its favor with regard to the sixth factor.  See Minpeco, 116 F.R.D. at 526-27.  However, "[i]n examining the hardship on the party from whom compliance is sought, courts . . . look at the likelihood that enforcement of the foreign law will be successful."  Id. at 526. If the likelihood that the objecting party will be prosecuted and convicted is "slight and speculative," a court may order disclosure.  See Strauss, 249 F.R.D. at 454 (citing First Nat'l City Bank, 396 F.2d at 905).

UOB NY has provided no information that would assist the Court in determining the likelihood that it would be prosecuted for disclosing the requested information, let alone any indication that the maximum penalty would be imposed.  While the penalties are not insignificant, the Court cannot conclude that the prospect of significant hardship is anything more than mere speculation.  Thus, the sixth factor, while a close call, does not overcome the Court's findings with respect the first five.

    7.   Good Faith of UOB NY

The Subpoena, issued on November 5, 2009, required production on November 16, 2009.  Rather than respond to the Subpoena or seek relief from Judge Sullivan's PI Order, by objections or otherwise, UOB NY sent a letter to Plaintiffs' counsel indicating that no responsive documents were maintained in New York, and that, in any

event, bank secrecy laws prohibit disclosure.  The parties' dispute was not brought to the Court's attention until December 29, nearly two months later.

UOB NY initially made several specious arguments in opposing production.  First, UOB NY argued that it lacked the authority to provide records maintained by its subsidiary in Malaysia.  As Plaintiffs correctly note, a parent company doing business in New York is required to produce documents held by its subsidiary, even if located overseas.  See Dietrich v. Bauer, No. 95 Civ. 7051 (RWS), 2000 WL 1171132, at *4 (S.D.N.Y. Aug. 16, 2000).  UOB NY is the New York office of UOB, which is the parent corporation of UOB Malaysia.  Thus, this first basis for opposing the Subpoena is simply incorrect as a matter of law.  After failing to respond to the Subpoena, UOB NY also argued that the front page of the Subpoena referred to "Overseas Bank Limited," rather than "United Overseas Bank Limited."  This dubious assertion is undermined by the inclusion of UOB NY's complete address, references throughout the Subpoena to "United Overseas Bank," and UOB NY's submissions to this Court, which clearly acknowledge receipt of the Subpoena. Therefore, at least some of UOB NY's initial resistance to the Subpoena was not in good faith.

On the other hand, UOB NY's claim that it could not comply with the Subpoena due to BAFIA was appropriate.  UOB NY expressed this view to Plaintiffs prior to the date of production, and

17

maintained this position throughout the dispute.  As evinced by the numerous cases cited in this Opinion, this is a frequent and common basis on which a foreign litigant, particularly a bank, opposes the production of documents.  Thus, the Court cannot conclude that UOB NY's actions were in bad faith.  Nonetheless, UOB NY's good faith efforts do not "tilt the balance in its favor."  Reino De Espana, 2005 WL 1813017, at *8.

## CONCLUSION

Upon complete consideration of all factors enumerated in the Restatement, Aerospatiale, and Minpeco, the Court concludes that compliance with the Subpoena by UOB NY is warranted in this case. In sum, the documents are vital to the litigation, the requests are direct and specific, the documents are not easily obtained through alternative means, the interest of the United States outweighs that of Malaysia under the circumstances, and the likelihood that UOB NY would face civil or criminal penalties is speculative.  Although UOB NY has acted in good faith, and the documents are located abroad, this is insufficient to overcome those factors weighing in favor of disclosure.

Accordingly, it is hereby ORDERED that UOB NY produce all documents and information responsive to the requests of the Subpoena within two weeks of the date of this Order.  This includes all documents located abroad, including but not limited to documents maintained by UOB Malaysia, the subsidiary of UOB.

So Ordered.

_____
THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated: March 8, 2010
       New York, New York


Copies mailed this date to:

Nicholas T. Donovan
Donovan & Giannuzzi, LLP
261 Madison Avenue
New York, New York 10016
Counsel for Third Party United Overseas
Bank Limited, New York Agency